IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| REBECCA J. ODEN § | |
| § | |
| vs. § | CIVIL ACTION NO. 6:21cv284 |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying her application for Social Security benefits. The matter was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636. For the reasons below, the Commissioner's final decision is **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance Benefits on June 5, 2017, alleging a disability onset date of March 4, 2014. The application was denied initially and on reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing and issued an unfavorable decision. Plaintiff submitted a request for review of the ALJ's decision. The Appeals Council remanded the matter to the ALJ for failure to apply the revised standard for consideration of medical opinions pursuant 20 CFR 404.1520c. The ALJ was instructed to give further consideration to Plaintiff's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations, while evaluating the opinion evidence in accordance with the provisions of 20 CFR 404.1520c.

Following remand, the ALJ conducted another hearing and issued an unfavorable decision on January 27, 2021. Plaintiff submitted a request for review of that decision. The Appeals Council denied the request for review on May 17, 2021. Plaintiff then filed this lawsuit on July 21, 2021, seeking judicial review of the Commissioner's decision.

**STANDARD**

Title II of the Act provides for federal disability insurance benefits. Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with

the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment"

is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot

perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

## ALJ'S FINDINGS

The ALJ made the following findings in his January 27, 2021 decision:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2017.

2. The claimant did not engage in SGA (substantial gainful activity) during the period from her alleged onset date of March 4, 2014 through her date last insured of March 31, 2017 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: osteoarthritis of the bilateral hips, cervical and thoracic spine degenerative disc disease, and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the RFC (residual functional capacity) to perform light work as defined in 20 CFR 404.1567(b) except she can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently. In an 8-hour workday she can sit, stand, and/or walk for 6 hours. She can frequently reach overhead bilaterally. She can frequently balance, stoop, kneel, crouch, and/or climb ramps and stairs, while she can occasionally crawl and/or climb ladders, ropes, and scaffolds. She can tolerate occasional exposure to unprotected heights, operating a motor vehicle, extreme cold, and vibration.

6. Through the date last insured, the claimant was capable of performing past relevant work as a Store Manager and Pharmacy Technician. This work did not require the performance of work-related activities precluded by the claimant's RFC (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 4, 2014, the alleged onset date, through March 31, 2017, the date last insured (20 CFR 404.1520(f).

**ADMINISTRATIVE RECORD**

*Administrative Hearing*

Plaintiff testified at her hearing before the ALJ on January 6, 2021.  Plaintiff testified that, during the relevant time period of March 4, 2014 to March 31, 2017, she was able to drive but had neck pain and difficulty turning her head after about an hour of driving.  Plaintiff also stated that neck issues caused her to stop working as a pharmacy technician because the job requires you to look down quite a bit.  Her past work additionally includes part-time work as a cashier and managerial positions at Dollar General and a convenience store.

Plaintiff explained that she is cautious lifting items over ten or fifteen pounds because it irritates her neck.  She estimated that she could be on her feet standing or walking for forty-five minutes before needing to rest for an hour and she could sit for an hour.  On a typical day, she estimated that she would lie down twice during the day.  She also stated that she had limitations with overhead reaching and lifting heavy items up off the ground.  Her excess weight caused difficulty squatting or handling temperature extremes and vibrations caused pain.  Plaintiff testified that medication helped her hypothyroidism and hypertension a little bit.  She described anxiety that caused her to break out in a sweat and retreat from big family functions.

A vocational expert witness, Michael Stinson, also testified at Plaintiff's hearing.  Mr. Stinson provided the following classifications for Plaintiff's past work: (1) store manager, DOT 185.167-046, light, SVP 7; (2) pharmacy technician, DOT 074.382-010, light, SVP 3; and (3) convenience store/service station manager, DOT 185.167-014, medium, SVP 7.  The ALJ asked Mr. Stinson to consider a hypothetical individual of Plaintiff's age, education and work experience who is limited exertionally to lift, carry, push, pull occasionally 20 pounds, frequently 10 pounds, sitting, standing and walking for 6 hours, limited to frequent overhead reached, climbing ramps

and stairs, balancing, stooping, kneeling and crouching and occasional climbing of ladders, ropes or scaffolds and crawling with only occasional exposure to unprotected heights, operation of a motor vehicle and extreme cold or vibration. Mr. Stinson testified that the hypothetical individual could perform Plaintiff's past work as a store manager or pharmacy technician. Mr. Stinson also identified the following additional jobs that would be available: (1) router, DOT 222.587-038, light, SVP 2, with 35,000 jobs in the national economy; (2) cashier II, DOT 211.462-010, light, SVP 2, with 569,000 jobs in the national economy; and (3) merchandise marker, DOT 209.587-034, light, SVP 2, with 130,000 jobs in the national economy. Mr. Stinson stated that his testimony was consistent with the Dictionary of Occupational Titles.

Mr. Stinson explained that the job numbers represent numbers from the Department of Labor and Bureau of Labor Statistics, as well as OES surveys, and he uses software programs to narrow them down to include only full-time jobs and specific DOT titles. If the hypothetical individual can only perform sedentary work limited to sitting for 6 hours with the ability to change positions every hour and stand or walk for 4 hours with the ability to change positions every 30 minutes, carry out simple decisions, occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, never climb ladders, ropes, or scaffolds or crawl with occasional exposure to moving mechanical parts or vibration and operation of a motor vehicle, who can respond frequently to coworkers and supervisors and occasionally to the public and will be off-task 10% of the day, Mr. Stinson testified that the individual would not be able to perform Plaintiff's past work as a pharmacy technician or as a store manager. Mr. Stinson explained that employers will generally tolerate up to, but no more than, 10% off-task time, but an individual who is chronically off-task 10% of the day would be subject to termination. Similarly, four absences per month or a need to

7

lie down and rest twice each workday for an hour at a time would preclude competitive full-time employment.

The ALJ presented a third hypothetical to Mr. Stinson of an individual of Plaintiff's age, education and work history limited exertionally to lift, carry, push or pull occasionally 10 pounds, frequently fewer than 10 pounds, with occasional reaching overhead, climbing ramps and stairs, balancing, stooping, kneeling, or crouching, never climbing ladders, ropes or scaffolds or crawling, who can hear and understand simple oral instructions, occasionally operate a motor vehicle and be exposed to extreme cold or vibration, with no exposure to unprotected heights, tolerate exposure to no more than moderately noisy environments, understand, remember and carry out instructions, perform simple, routine and repetitive tasks, but not at a production rate pace, interact with supervisors and coworkers frequently and the public occasionally, deal with changes in the work setting, make simple, work-related decisions, and would be off-task 5% of the day.  Mr. Stinson testified that the individual could not perform Plaintiff's past work.  He identified the following sedentary jobs that would be available: (1) document preparer, DOT 249.587-018, sedentary, SVP 2 with 19,000 jobs in the national economy; (2) cutter paster in a newspaper ad room, DOT 249.587-014, sedentary, SVP 2, with 12,000 jobs in the national economy; and (3) addresser, DOT 209.587-010, sedentary, SVP 2, with 2,700 jobs in the national economy.

*Medical Record*

In 2012, Dr. Uretsky treated Plaintiff for mild hypothyroidism, anxiety and mild neck pain. Plaintiff reported anxiety improvement on Celexa and sought to reduce the dosage on April 23, 2012.  Dr. Uretsky prescribed Flexeril and relaxing exercises for neck pain. On October 19, 2012, Plaintiff complained of headache associated with hypertension.  She was also treated for hyperlipidemia.  In 2013, Plaintiff first complained of low back pain radiating to the left buttock.

Dr. Makam noted posterior tenderness, paravertebral muscle spasm and positive straight leg raises. He added pain medication and Motrin to Plaintiff's medications. At a follow up for neck pain on April 30, 2014, Dr. Uretsky noted that Flexeril was effective and Plaintiff received great relief from massage. Plaintiff's neck was tender on palpation.

Plaintiff reported difficulty functioning due to anxiety on January 27, 2015. She described difficulty concentrating and excessive worry. Dr. Uretsky noted that Celexa was effective but Plaintiff needed to work on abuse issues and anxiety triggers. On November 2, 2015, Dr. Uretsky described stable hypertension and mild thyroid issues. Plaintiff did not show agitation or anxiety and had an appropriate mood and affect. Dr. Uretsky prescribed sleep medication due to temporary family issues. The following year, on October 24, 2016, Dr. Uretsky noted improvement in Plaintiff's thyroid. On examination, Plaintiff had cervical tenderness to palpation, mild posterior muscle spasm and reduced right rotation. Dr. Uretsky prescribed Flexeril and Valium with bed rest for a few days. Plaintiff first complained of fatigue associated with sleep disturbance on March 1, 2017. She reported increased blood pressure readings after stopping the birth control pill. On examination, her blood pressure was 162/84. Dr. Uretsky opined that Plaintiff's fatigue was due to poor sleep caused by stress and he increased her Celexa.

Plaintiff had a left ovarian cyst removed on June 15, 2016. She went to the emergency room with a urinary tract infection, ascites and constipation on May 28, 2017. A CT showed moderate fluid in the pelvis, unchanged gallstone and unremarkable bowel.

State agency medical consultants reviewed the medical record and completed assessments. On July 7, 2017, Dr. Kim Rowlands reviewed the initial evidence from Dr. Uretsky and Good Shepherd Medical Center and opined that the record does not establish a severe physical impairment. Similarly, Mark Schade, Ph.D., reviewed the record and concluded that there was

insufficient evidence of a severe mental impairment before the date last insured. On reconsideration, Dr. Brian Harper reviewed the record and agreed that the record does not establish a severe physical impairment and Sallie Boulos-Sophy, Ph.D., agreed that there was no evidence of a severe mental impairment prior to the date last insured.

Plaintiff went to the emergency room with abdominal pain on July 30, 2017. An ultrasound showed gallstones. Dr. Merritt performed a laparoscopic cholecystectomy. At a follow up with Dr. Uretsky on November 17, 2017, Plaintiff reported moderate neck pain and heartburn. On examination, Dr. Uretsky noted that Plaintiff is overweight, she had mid-cervical spinal tenderness and she had upper abdominal tenderness. Plaintiff went to the emergency room with abdominal pain on February 23, 2018. A CT showed a large amount of stool throughout the colon but was otherwise negative. Plaintiff returned on March 4, 2018 with worsening abdominal pain. Plaintiff exhibited tenderness to light palpation in the mid epigastric region. An endoscopy showed mild reflux esophagitis and a small hiatal hernia. A CT showed no evidence for an acute process. Plaintiff received cervical and thoracic spinal adjustments with Charles Cottier, D.C., on May 11, 2018.

Dr. Uretsky examined Plaintiff and completed a Treating Source Statement on June 7, 2018. On examination, Plaintiff had cervical tenderness on palpation. Plaintiff exhibited an appropriate mood and affect. Dr. Uretsky identified Plaintiff's diagnoses to include hypertension, chronic neck pain, GERD, menopause, insomnia NOS, hypothyroid and high cholesterol. He opined that Plaintiff would likely be "off task" 25% of a workday, she can maintain attention and concentration for less than 2 hours at a time, she is likely to be absent from work four days per month, she can frequently lift and carry up to 10 pounds only, she can sit, stand and walk for 8 hours in an 8-hour workday, she requires the option to sit/stand at-will, she can occasionally reach

overhead and continuously reach, handle, finger, feel push and pull, she can continuously use foot controls, climb stairs and ramps, climb ladders and scaffolds, balance, stoop, kneel, crouch and crawl, frequently rotate head and neck and can have continuous exposure to unprotected heights, moving mechanical parts, operating a vehicle, humidity and wetness, dust/odors/fumes/pulmonary irritants, extreme cold, extreme heat and vibrations.

At a follow up with Dr. Uretsky on December 31, 2018, Plaintiff reported an improvement in her anxiety and neck pain. On June 28, 2019, Dr. Uretsky described Plaintiff's anxiety symptoms as controlled and stated that she had a good response to Celexa. Plaintiff went to the emergency room on December 17, 2019 complaining that her blood pressure medication was not working. On arrival, Plaintiff's blood pressure was 187/111. After taking clonidine, her blood pressure was 168/80. A chest X-Ray was negative.

Plaintiff went to the emergency room on September 18, 2020 complaining of right upper leg pain. Circulation, motion, strength, and sensation were intact in all extremities. A right hip X-Ray showed mild acetabular roof sclerosis. She was treated with Tylenol. She returned to the emergency room with a bruised right shin on June 4, 2020 following a fall. An X-Ray showed no acute findings.

Dr. Uretsky completed another Treating Source Statement on November 5, 2020. On this form, he stated that Plaintiff's diagnoses are "too many to list," but he identified anxiety and muscle spasm-tension.[1] He stated that Plaintiff's prognosis is good and that she exhibits "motor tension" as the basis for finding a general anxiety disorder. When asked to identify the particular clinical findings including results of a mental status examination demonstrating the severity of Plaintiff's mental impairment and symptoms, he stated "none."[2] Dr. Uretsky found no limitations

---

[1] Administrative Record, ECF 10-17, at *5.
[2] *Id*.

in Plaintiff's ability to understand, remember or apply information, to concentrate, persist or maintain pace, to adapt or manage oneself, or to understand and remember. Dr. Uretsky noted that Plaintiff's ability to interact with others, remember locations and work-like procedures, understand and carry out very short and simple instructions, understand and carry out detailed but uninvolved written or oral instructions, to sustain concentration and persistence or to work appropriately with the general public, co-workers or supervisors is unknown or uncertain. He opined that she does not require enhanced supervision, she has the ability to maintain socially appropriate behavior and she "probably" has the ability to respond appropriately to changes in work settings. Concerning Plaintiff's attention and concentration, Dr. Uretsky stated that the amount of time she is likely to be off-task is unknown and the number of days per month she would be absent is unknown.

## DISCUSSION AND ANALYSIS

In her brief, Plaintiff presents two issues for review: (1) whether the ALJ's RFC determination is legally erroneous because he failed to evaluate the opinion of Gorden Uretsky, MD, in accordance with the applicable rules and regulations; and (2) whether the ALJ made a legally erroneous RFC determination based on his own lay interpretation of the medical data. Plaintiff argues that the ALJ provided an insufficient conclusory statement for his finding that Dr. Uretsky's opinion was unpersuasive. Plaintiff asserts that the ALJ essentially rejected Dr. Uretsky's opinion without adequately address the supportability or consistency of the opinion. Plaintiff submits that Dr. Uretsky's opinion is supported by his findings that muscle tenderness causes Plaintiff's limitations and that she is unable to stand and reach without aggravating her pain. Plaintiff contends that the ALJ rejected every physical medical opinion of record and "inevitably

engaged in his own interpretation of the medical evidence and substituted his own lay opinion for that of the medical professionals."[3]

In response, the Commissioner asserts that the ALJ properly found that Dr. Uretsky's opinion was not supported by his own objective findings and was inconsistent with other evidence in the record. The Commissioner submits that the ALJ detailed Dr. Uretsky's objective findings both in his discussion of severe impairments and Plaintiff's RFC. The Commissioner states that the ALJ's summary included objective findings from examinations during the relevant time period with no complaints of neck or shoulder pain and normal neck examination, as well as other examinations that only showed mild abnormality. The Commissioner argues that the ALJ properly considered the evidence while assessing her RFC and did not "play doctor."

In her reply, Plaintiff asserts that the Commissioner improperly seeks to offer post-hoc rationalizations to explain the ALJ's decision. Plaintiff submits that the ALJ did not properly articulate his consideration of the supportability and consistency factors. Further, relying on a district court case out of the Southern District of Texas, *Brian K.L., Sr. v. Commissioner of Social Security*, 2022 WL 902641 (S.D. Tex. March 28, 2022), Plaintiff re-asserts that the ALJ improperly reached his RFC finding using his lay interpretation of the medical evidence after rejecting the only medical opinions in the record concerning Plaintiff's functional limitations.

It is the ALJ's responsibility to determine a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). That finding, however, must be supported by substantial evidence. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d at 452. On review, the Court will scrutinize the record to determine whether substantial evidence is present to support

---

[3] Brief in Support of Plaintiff's Claim for Social Security Disability Benefits, ECF 15, at 8.

the ALJ's finding, but the Court cannot reweigh the evidence or substitute its judgment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971)).

The revised rules for the consideration and articulation of medical opinions apply to claims filed after March 27, 2017. 20 C.F.R. § 404.1520c. Plaintiff filed her application on January 9, 2019. Pursuant to 20 C.F.R. § 404.1520c(a), the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." The ALJ evaluates the persuasiveness of the medical opinions and articulates the consideration of medical opinions, but the ALJ is not required to explain the consideration of each factor that is considered. 20 C.F.R. § 404.1520c(b). The "supportability" and "consistency" factors are most important. *Id*.

In his discussion at step two of the analysis, the ALJ recited the treatment notes from each visit with Dr. Uretsky, as well as examinations by Dr. Dozier, Dr. Cottier and emergency room personnel. At this step, the ALJ concluded that Plaintiff's severe impairments include osteoarthritis of the bilateral hips, cervical and thoracic spine degenerative disc disease, and obesity. At step four, the ALJ considered Plaintiff's symptoms together with the objective medical evidence and other evidence to assess her RFC. The ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical evidence or the evidence received at the hearing. The ALJ pointed to specific evidence in the medical record, including Dr. Uretsky's treatment notes, showing some visits during the relevant time period with cervical tenderness, spasm and limited range of motion,

and multiple examinations where her neck was normal to inspection and normal on palpation. The ALJ noted that Dr. Uretsky's examination notes refer to mild symptoms.

Turning to medical opinions and prior administrative findings, the ALJ explained that the State agency medical consultants reviewing Plaintiff's physical impairments found no severe impairments. The ALJ, however, stated that the evidence received at the hearing after the consultants reviewed the record, "preponderated in favor of finding the claimant has severe physical impairments."[4] These consultants, finding no severe impairments, did not reach consideration of Plaintiff's functional limitations. The Stage agency consultants reviewing Plaintiff's mental impairments found insufficient evidence before the date last insured concerning Plaintiff's psychological impairments. The ALJ determined that these opinions were partially persuasive because they essentially find no severe psychological impairments.

The ALJ then considered Dr. Uretsky's medical source statement dated June 7, 2018, opining that Plaintiff can frequently lift and carry ten pounds, sit, stand and walk for 8 hours in an 8-hour workday, occasionally reach overhead bilaterally, and continually reach in all other directions, handle, finger, feel, and push/pull bilaterally, operate foot controls bilaterally, frequently rotate her head and neck and continually climb stairs and ramps, climb ladders and scaffolds, balance, stoop, kneel, crouch, and crawl, have continuous exposure to unprotected heights, moving mechanical parts, operate a vehicle, humidity and wetness, extreme cold/heat, vibrations, and dust, odors, fumes, and pulmonary irritants. The ALJ concluded that the opinion "is not persuasive because it is inconsistent with the comparatively mild musculoskeletal symptoms he assessed in the claimants office visits for several years."[5] As stated above, those

---

[4] Administrative Record, ECF 10-2, at *25 (Bates stamp p. 24).
[5] *Id*. at *26 (Bates stamp p. 25).

office visits are addressed thoroughly and cited throughout the ALJ's discussion at step two and step four.

The ALJ then considered Dr. Uretsky's later opinion dated November 5, 2020, opining that Plaintiff's prognosis is good, she is not limited in her ability to understand, remember, or apply information, concentrate, persist, or maintain pace, or in her ability to adapt or manage herself. He also stated that she has no limitations in her memory or ability to understand, she does not require enhanced supervision, she has the ability to maintain socially appropriate behavior and can probably respond appropriately to changes in work settings. The ALJ reasoned that this opinion is persuasive "because it aligns with the claimant's mild clinical presentations over the years in terms of her alleged anxiety."[6]

In his RFC analysis, the ALJ explained:

> Despite the paucity of evidence during the relevant period supporting the claimant's allegations, I have interpreted the evidence with the widest latitude possible and limited the claimant to a reduced range of work at the Light exertional level. Due to her cervical and thoracic spine impairments, she can only frequently reach overhead bilaterally. These impairments, in conjunction with her other impairments, also warranted my limitation to frequently climb ramps and stairs; occasionally climb ladders, rope and scaffolds; frequently balance, stoop, kneel, and crouch; and occasionally crawl. Plus, in an abundance of caution, I have restricted the claimant to have occasional exposure to unprotected heights, operating a motor vehicle, extreme cold, and vibration.

Administrative Record, ECF 10-2, at *25 (Bates stamp p. 24).

The ALJ addressed both the supportability and consistency of Dr. Uretsky's opinions and identified specific medical evidence to support his conclusions. The ALJ explained that Dr. Uretsky's own treatment notes—fully summarized and cited in the decision—show mild musculoskeletal symptoms that do not support his assessed limitations. Even so, a comparison of

---

[6] *Id*.

Dr. Uretsky's source statement and the RFC determined by the ALJ illustrates that the ALJ did not reject Dr. Uretsky's opinion in full and adopted many of his assessed limitations:

| **Dr. Uretsky's Opinion** | **ALJ's RFC Finding** |
|---|---|
| Frequently lift and carry 10 pounds | Frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds |
| Sit, stand, walk for 8 hours | Sit, stand, walk for 6 hours |
| Occasionally reach overhead bilaterally and continually reach in all other directions, handle, finger, feel, and push/pull bilaterally | Frequently reach overhead bilaterally |
| Continually operate foot controls bilaterally | No restriction on foot controls |
| Frequently rotate head and neck | No restriction on rotation of head and neck |
| Continually balance, stoop, kneel, crouch and/or climb ramps and stairs | Frequently balance, stoop, kneel, crouch and/or climb ramps and stairs |
| Continually crawl and/or climb ladders, ropes and scaffolds | Occasionally crawl and/or climb ladders, ropes and scaffolds |
| Continuous exposure to unprotected heights, moving mechanical parts, operating a vehicle, humidity and wetness, extreme cold/heat, vibrations, and dust, odors, fumes, and pulmonary irritants | Occasional exposure to unprotected heights, operating a motor vehicle, extreme cold, and vibration |

Indeed, in most areas the ALJ assessed more limitations in Plaintiff's functional ability than Dr. Uretsky.

Unlike a treating physician, an ALJ assessing a claimant's RFC considers symptoms asserted by the claimant in her documents and at her hearing, daily activities, the frequency and intensity of pain, the effects of medication, as well as all other medical evidence and opinion statements in the record. 20 C.F.R. § 404.1529. There is no requirement that the ALJ's RFC finding must mirror a physician's opinion. As previously stated, it is the ALJ's responsibility to determine a claimant's residual functional capacity. *Ripley v. Chater*, 67 at 557. Here, unlike the

non-binding precedent relied upon by Plaintiff, the ALJ did not reject all physician opinions, crediting no ascertainable portions of those opinions, and form an RFC of his own creation from raw medical data.[7] The ALJ clearly incorporated Dr. Uretsky's opinion in his RFC assessment.

For all of these reasons, Plaintiff has not shown that the ALJ failed to properly consider the opinion of Dr. Uretsky in compliance with the revised regulations and his RFC finding is supported by substantial evidence. The Commissioner's decision should be affirmed and the complaint should be dismissed. It is therefore

**ORDERED** that the Commissioner's final decision is **AFFIRMED** and this social security action is **DISMISSED WITH PREJUDICE**.

So ORDERED and SIGNED this 23rd day of May, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[7] *Brian K.L. v. Commissioner of Social Security*, 2022 WL 902641, at *6–7.